**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **YOPIMA, LLC,** <br> **Plaintiff,** | |
| | **Civil Action No. 4:26-cv-05568** |
| **v.** | |
| **SPOTHERO, INC.,** <br> **Defendant** | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Yopima, LLC, files this Original Complaint and demand for jury trial seeking relief from infringement of U.S. Patent No. 9,119,038 (the "'038 patent" or "Patent-in-Suit") by Defendant SpotHero, Inc. ("SpotHero" or "Defendant").

**I. THE PARTIES**

1. Plaintiff is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.

2. On information and belief, Defendant SpotHero, Inc. is a Delaware corporation with its principal executive office at 125 S. Clark Street, Suite 1300, Chicago, Illinois 60603. SpotHero is registered and licensed to do business in Texas as a foreign for-profit corporation. SpotHero may be served through its Texas registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, National Registered Agents, Inc., 208 SO LaSalle Street, Suite 814, Chicago, Illinois 60604, at its principal office, or anywhere else it may be found.

3. On information and belief, SpotHero conducts substantial business throughout Texas and in this District through its parking-reservation marketplace, website, mobile applications, Texas parking-facility relationships, and Houston marketplace pages. (*See e.g.,* https://spothero.com/destination/houston/houston-center-parking) SpotHero advertises, offers,

arranges, sells, and processes parking reservations for Houston-area parking facilities and destinations, including hourly/daily parking, monthly parking, airport parking, event parking, stadium parking, commuter parking, weekend parking, and overnight parking.

**II. JURISDICTION AND VENUE**

4. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Accused Instrumentalities in the United States. This is a patent infringement lawsuit over which this Court has subject-matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has general and specific personal jurisdiction over Defendant because Defendant is licensed to do business in Texas, has purposefully directed its acts and commerce to Texas and this District, has transacted and conducted business with residents of Texas and this District, and has committed acts within this District giving rise to this action.

6. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas. SpotHero's Texas business is not incidental. SpotHero maintains Texas-specific marketplace pages, offers reservations for identifiable Texas parking facilities, processes prepaid parking reservations for Texas facilities, and offers parking products and services directed to Texas users and Texas destinations.

7. SpotHero's Houston marketplace is directed to this District. SpotHero's Houston page invites customers to "find and reserve parking in Houston, TX," compare pricing on parking spots near destinations, make instant reservations, extend reservations on the go, and book online or through SpotHero's parking app. SpotHero's Houston materials identify parking at Hobby Airport and George Bush Intercontinental Airport, monthly parking in Houston, and Houston destination

2

categories including airports, hotels, restaurants, stadiums, sports events, office buildings, businesses, and parking spots.

8. On information and belief, Defendant has committed acts of infringement within this District and the State of Texas by making, using, selling, offering for sale, providing, operating, supporting, advertising, promoting, and/or otherwise commercializing the Accused Instrumentalities, including SpotHero's website, mobile applications, parking-reservation marketplace, location-based search, parking-pass, navigation, and facility-entry workflows. Defendant, directly and through intermediaries, makes, uses, sells, offers to sell, distributes, advertises, promotes, and/or otherwise commercializes such Accused Instrumentalities in this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in persistent courses of conduct in, and derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

9. The amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1400(b) based on the information set forth herein, which is repeated and incorporated by reference. SpotHero has committed acts of infringement in this District by operating, offering, and facilitating its accused parking-reservation and location-based mobile-app systems in this District, including through its Houston marketplace. On information and belief, SpotHero also maintains a regular and established business presence in this District through its established Houston marketplace operations, Houston-area parking-facility relationships, commercial reservation infrastructure, and continuing transactional relationships with Texas users and Texas parking providers. Plaintiff's venue allegations are based on public materials presently available, including SpotHero's Texas registration, its Houston-specific marketplace, its Houston parking offerings, and its Texas-directed commercial reservation activity.

3

**III. INFRINGEMENT OF THE '038 PATENT**

11. On August 25, 2015, the United States Patent and Trademark Office duly and legally issued the '038 patent, titled "Systems and Methods for Comparative Geofencing." Exhibit A. Plaintiff owns the '038 patent by assignment.

12. The '038 patent addresses concrete problems arising in mobile geolocation systems, including battery consumption, bandwidth usage, CPU load, and the need to coordinate geolocation monitoring with arrival, departure, and event times. The specification explains that conventional geolocation services may run in the background and perform repeated location queries for days, weeks, or months before a geofence is entered, needlessly consuming battery, bandwidth, and CPU cycles. Ex. A, col. 7:7-20. The patent describes a technical solution using time-based geolocation queries, designated planned arrival and/or departure times, event start/end times, and controlled query frequencies to reduce unnecessary queries or increase query frequency only during a useful time window. Ex. A, col. 7:40-47; col. 7:49-col. 8:15; Figs. 1A-1D.

13. The '038 patent also discloses comparative geofencing systems in which a monitoring service receives notifications from multiple devices and identifies subregions within a broader region. Ex. A, col. 15:3-40; Figs. 4A-4B. The specification explains that an overall region may be defined by a first geofence and that subregions may be defined within that overall region, such as restaurants, nightclubs, individual buildings, neighborhoods, streets, campuses, cities, or other areas. Ex. A, col. 15:17-26; Fig. 4A. The monitoring service uses information sent with notifications to determine that a device is within a particular subregion and to update statistics for that subregion. Ex. A, col. 15:27-40.

14. The '038 patent is directed to patentable subject matter. The '032 patent claims and describes specific computer-implemented geolocation operations performed by portable

computing devices and networked computing devices, including receiving geofence identifications, determining device location, comparing current location to geofence boundaries, transmitting arrival notifications, identifying a current location within one of a plurality of subregions, and doing so in an architecture that uses portable devices, location engines, timers, notification engines, user databases, location analyzers, communication engines, and network interfaces. Ex. A, col. 10:20-65; col. 11:4-56; col. 19:21-col. 20:15; Figs. 2, 3, 5, and 6.

15. The claimed technology improves computer and mobile-device operation by reducing unnecessary background geolocation polling and by allowing location monitoring to be tied to real-world temporal conditions such as planned arrival times, departure times, event start times, and event end times. The patent explains that these systems can reduce battery and CPU usage, reduce bandwidth consumption, and provide enhanced temporal resolution within a useful window of interest. Ex. A, col. 7:7-20; col. 7:40-47; col. 8:48-65; col. 14:51-56. Those are computer-network and mobile-device improvements, not generic business practices performed on an ordinary computer.

16. Claim 13 of the '038 patent recites a method for tracking locations of a plurality of devices within overlapping geofences. The method includes receiving, by a portable computing device, an identification of a first geofence defining a first region; determining a current location of the portable computing device; comparing the current location of the portable computing device to the identified first geofence; and transmitting an arrival notification to a second computing device when the portable device determines that it is within the identified first region, with the arrival notification including an identification of the current location within one of a plurality of subregions of the first region defined by a corresponding plurality of geofences. Ex. A, claim 13, col. 23:33-col. 24:49.

17. Support for Plaintiff's infringement allegations is found in the preliminary infringement chart attached as Exhibit B. Those allegations are preliminary and may be amended or supplemented as discovery proceeds. The Accused Instrumentalities include, by way of example and without limitation, SpotHero's website, SpotHero mobile applications, SpotHero user accounts, SpotHero parking marketplace, SpotHero map-based search functionality, location-based parking search and comparison functionality, parking-reservation workflow, SpotHero parking pass, navigation functionality, reservation confirmation functionality, QR-code or scanner-based facility-entry workflow, parking-facility integrations, backend reservation systems, and substantially similar systems, applications, services, components, and instrumentalities used to search for, reserve, navigate to, confirm, and enter parking facilities.

18. SpotHero's public materials show that its accused system is used to find and book parking, including through a mobile application. Exhibit B shows that SpotHero provides a mobile application that uses device location in connection with parking reservations at specified parking facilities, including reserved parking garages, and that SpotHero's materials show user devices associated with specific reserved parking locations as part of the parking and entry workflow. Ex. B at 1-2. SpotHero's Houston marketplace likewise invites users to enter parking times and dates, view spots on a map, book online, and use the free parking app. SpotHero's Houston materials also state that users can make reservations instantly and extend reservations on the go.

19. The accused SpotHero system practices the preamble of claim 13 because it is directed to a method for tracking locations of a plurality of portable computing devices within overlapping geofences. SpotHero provides a mobile application for smartphones, and Exhibit B identifies the smartphone running the SpotHero app as the portable computing device. Ex. B at 1. SpotHero's accused app displays map-based parking locations, uses device location, supports navigation to a

reserved parking location, and enables a parking pass to be presented at or near a reserved garage. Ex. B at 1-7. On information and belief, the plurality of devices includes the smartphones of SpotHero users using the SpotHero app and related mobile-web functionality in the same city, venue, event, airport, stadium, business district, or parking-market region.

20. The accused SpotHero system practices limitation [13A]. When a SpotHero user searches for and reserves parking, the SpotHero app and associated SpotHero servers provide the user's smartphone with available parking garages and parking locations on a map near the user's destination. Ex. B at 3. The claim chart identifies those available parking locations as geofences and alleges that all available parking locations shown on the map constitute a first geofence defining a first region. Ex. B at 3. SpotHero's Houston page confirms that users enter the times and dates they want to park, view spots near them on a map, and then click, book, and park. That functionality supports the reasonable inference that the portable computing device receives location and boundary information corresponding to parking locations and a surrounding marketplace/search region.

21. The accused SpotHero system practices limitation [13B]. The portable computing device determines its current location so the SpotHero app can navigate the user to the reserved parking location. Ex. B at 4. Exhibit B shows a SpotHero parking pass displayed on a smartphone with the reserved garage and a "Navigate" control. Ex. B at 4. A navigation workflow cannot plausibly function without determining the current location of the phone, either through the phone's location engine, operating-system location services, GPS, network-derived location, or substantially equivalent location functionality made available to and used by the SpotHero app.

22. The accused SpotHero system practices limitation [13C]. During navigation to the reserved garage, the SpotHero app and portable computing device compare the current location of

the smartphone to the identified first geofence to navigate the user to the reserved garage. Ex. B at 5. The comparison may be performed directly by the smartphone, by SpotHero app logic using phone location services and reservation data, by SpotHero backend logic acting with the app, or by a coordinated combination of those components. At the pleading stage, the record supports the reasonable inference that SpotHero's accused app, servers, and reservation data identify a destination/parking geofence and use the phone's current location relative to that geofence in the accused navigation and parking-arrival workflow.

23. The accused SpotHero system practices limitation [13D]. After the user reaches the reserved garage, the SpotHero app provides the SpotHero pass to a reserved-garage scanner or related facility computer. Exhibit B identifies this step as transmitting an arrival notification from the portable computing device to a second computing device, responsive to determining that the smartphone is in the reserved garage within the identified first region. Ex. B at 5-6. The SpotHero pass includes reservation information and is presented in a form used by the parking facility to confirm the reservation and permit entry or parking. Ex. B at 6. On information and belief, the scanner, gate system, facility computer, or related reservation-validation system is the claimed second computing device or is connected to the claimed second computing device.

24. The accused SpotHero system practices limitation [13E]. The arrival notification includes an identification of the current location of the portable computing device within one of a plurality of subregions of the first region defined by a corresponding plurality of geofences. Exhibit B alleges that the SpotHero pass includes the location of the reserved garage and that the reserved garage is one available parking location, or subregion, within the broader first region made up of available parking locations shown on the map. Ex. B at 7. The SpotHero pass depicted in Exhibit B identifies the reserved facility and reservation information, which is the information used by the

facility scanner or related computer to determine that the user is presenting the pass for that reserved garage rather than a different parking subregion. Ex. B at 6-7.

25. The claim chart should be read together with SpotHero's Houston-specific materials. (*See* attached Exhibit C generally.) SpotHero's Houston page states that users can reserve parking in Houston, compare pricing, make instant reservations, extend reservations on the go, and book online or through the SpotHero app. It also identifies Houston airport parking at Hobby Airport and George Bush Intercontinental Airport, monthly parking in Houston, and categories of Houston destinations such as stadiums, events, office buildings, businesses, and parking spots. Those materials corroborate the claim chart's allegations that the accused system operates through location-specific parking reservations, map-based parking searches, and mobile-app workflows tied to specific parking facilities in a city marketplace.

26. SpotHero directly infringes at least claim 13 of the '038 patent by making, using, offering, providing, operating, controlling, testing, supporting, and/or benefiting from the Accused Instrumentalities. SpotHero operates the accused marketplace and backend reservation system; provides the accused mobile application and website; supplies the parking-pass workflow; specifies the reservation and pass format; enables map-based selection and navigation to parking locations; and receives the commercial benefit of completed reservations and associated fees.

27. To the extent SpotHero contends that a user, smartphone, smartphone operating system, parking operator, garage scanner, gate system, facility computer, payment processor, mapping provider, or other third-party component performs a step that SpotHero itself does not physically perform, the allegations nevertheless support direct infringement by SpotHero. SpotHero conditions participation in the accused parking marketplace on use of the SpotHero app, SpotHero website, SpotHero account and reservation workflows, SpotHero pass, SpotHero-specified

reservation data, and SpotHero-prescribed parking-facility acceptance procedures. SpotHero establishes the manner and timing of the relevant acts by instructing users to search, book, navigate, present the SpotHero pass, and park; by instructing facilities to accept and validate SpotHero reservations; and by coordinating the backend transaction that makes the pass usable at the reserved facility. SpotHero receives the benefit of the performed acts because they complete SpotHero's paid reservation transaction and enable SpotHero to provide, support, and monetize its parking marketplace. Ex. B at 1-7.

28. Plaintiff's infringement theory does not depend on treating unrelated products as a single accused product without explanation. The accused system is the integrated SpotHero parking-reservation platform, including the SpotHero app, SpotHero website, SpotHero backend reservation services, SpotHero pass, facility-entry validation workflow, and associated parking-facility integrations used together to complete a parking reservation and facility-entry transaction. Exhibit B identifies how the accused app, map, navigation, pass, scanner, and reserved garage workflow operate together. Ex. B at 1-7.

29. Plaintiff's infringement allegations also do not depend on an improper abstraction of the claims. The alleged infringement is tied to concrete claim limitations and corresponding accused functionality: a smartphone with the SpotHero app, a parking-search region, available parking garages shown on a map, the phone's current location, navigation to the reserved garage, presentation of the SpotHero pass, a scanner or facility computer receiving the pass, and identification of the reserved garage as a subregion within a broader parking-search region. Ex. B at 1-7.

30. Defendant has had knowledge of the '038 patent and Plaintiff's infringement allegations at least as of service of the original complaint and accompanying Exhibit B. Plaintiff

reserves the right to seek leave to amend if discovery shows earlier knowledge of the '038 patent, the accused technology, or Defendant's infringement.

31. Defendant has induced infringement of at least claim 13 of the '038 patent by actively encouraging, instructing, directing, and causing users and parking-facility participants to use the Accused Instrumentalities in the infringing manner. SpotHero instructs users to download and use the SpotHero app, search and compare parking, book parking, navigate to a reserved facility, present the SpotHero pass, and use the pass to enter or park at the reserved facility. Ex. B at 1-7. Those instructions and workflows encourage the very acts that satisfy the limitations of claim 13.

32. Defendant has contributorily infringed at least claim 13 of the '038 patent by offering and providing material components of the claimed method, including the SpotHero app, SpotHero pass, SpotHero reservation data, SpotHero backend services, and facility-entry validation workflow. These components are especially made or adapted for use in SpotHero's accused parking-reservation and facility-entry workflow and are not staple articles suitable for substantial noninfringing use in the accused configuration. Plaintiff pleads direct infringement by SpotHero and, in the alternative, direct infringement by users and parking-facility participants who perform the accused steps using SpotHero's prescribed app, pass, reservation, and facility-entry workflow.

33. Defendant's acts of infringement have caused and will continue to cause Plaintiff damage. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement, including no less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs.

### IV. CONDITIONS PRECEDENT

34. Plaintiff has never sold a product. Based on information and belief, Plaintiff's predecessor-in-interest has never sold a product. Plaintiff is a non-practicing entity, with no

products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

35. Plaintiff and its predecessors-in-interest have granted settlement licenses to several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with §287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the patent-in-suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method claims and thereby remove any requirement for marking.

36. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the patent-in-suit, and that Plaintiff has substantially complied with the marking statute. Defendant has failed to identify any alleged patented article for which §287(a) would apply. Further, Defendant has failed to allege any defendant entity produced a patented article.

37. The policy of §287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of §287

are not violated. Such a result is further warranted by 35 U.S.C. §286 which allows for the recovery of damages for six years prior to the filing of the complaint.

38. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

39. Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of §287 are not violated.

40. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Yopima to make an effort to require a prior settling defendant to mark the products Yopima had accused of infringing its patents.

## V. JURY DEMAND

41. Plaintiff hereby requests a trial by jury on issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.    enter judgment that Defendant has infringed the claims of the patent-in-suit;

13

b.    award Plaintiff damages in an amount sufficient to compensate it for Defendant's infringement, in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c.    award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement; and

d.    declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses, and costs incurred in this action;

e.    provided discovery reveals that Defendant knew (1) knew of the patent-in-suit prior to the filing date of the lawsuit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent, declare Defendants' infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.    a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the patent-in-suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendants will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and,

g.    award Plaintiff such other and further relief as this Court deems just and proper.

DATED: July 14, 2026                    Respectfully submitted,


                                        */s/ William P. Ramey, III*
                                        William P. Ramey, III
                                        Texas Bar No. 24027643
                                        RAMEY LLP
                                        wramey@rameyfirm.com
                                        446 Heights Blvd., Suite 200
                                        Houston, Texas 77007
                                        (713) 426-3923 (telephone)
                                        (832) 900-4941 (fax)

                                        **Attorneys for Yopima, LLC**

15